**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**CARA SCHAEFER WIENEKE**
Wieneke Law Office, LLC
Plainfield, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| AARON JOHNSON, ) | |
| ) | |
| Appellant-Petitioner, ) | |
| ) | |
| vs. ) | No. 71A03-1404-PC-111 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Respondent. ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable John M. Marnocha, Judge
Cause No. 71D02-1002-PC-9

**January 23, 2015**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Aaron Johnson appeals the denial of his petition for post-conviction relief. We affirm.

**Issues**

Johnson raises two issues, which we restate as:

> I.  whether appellate counsel was ineffective for raising an ineffective assistance of trial counsel claim on direct appeal; and
>
> II.  whether the post-conviction court properly concluded that Johnson's cohorts' testimony at the post-conviction relief hearing did not warrant a new trial.

**Facts**

The facts relating to Johnson's convictions for Class C felony robbery, Class B felony rape, and Class B felony criminal deviate conduct are as follows:

> On April 24, 2003, at approximately 11:30 p.m., Brian Chambers was walking through a parking lot on his way home from work in South Bend. At some point, three African-American males who were later identified as Johnson, Terrease [N]esbitt, and Antonio Pettire, exited a green SUV vehicle and demanded that Chambers give them his money. Chambers, however, began to run from the scene but felt someone grab him from behind. He then dropped to the ground and tried to hold onto his billfold. Chambers then felt someone kick him in the ribs. As no one was assisting Chambers, he ultimately gave the wallet to one of the assailants. . . .
>
> That same evening, twenty-year-old M.B. began walking home from a friend's house. Suddenly, a Ford Explorer with Johnson, Nesbitt, Pettrie, and Sylvester Dingle inside "sped out of nowhere" and approached M.B. While M.B. did not actually know any of the men, she thought that they might have been friends of her brother. M.B. then accepted a ride from them, sat in the middle of the back seat

2

between Dingle and Nesbitt, and told the men to take her to a particular location.

When the vehicle began traveling in the opposite direction, M.B. became fearful that the men were going to rape her, and she began to cry. When the truck eventually stopped in an alley, one of the men placed his penis inside M.B.'s mouth, and one of the others put his penis in her vagina. Later, the two men from the front seat forced M.B. to perform oral sex on and have intercourse with them. M.B. stated that Johnson was one of the men who engaged in oral sex and intercourse with her.

Thereafter, the group drove around for a while and finally stopped at Kathryn Spears's residence with M.B. still in the vehicle. At some point, the men began to argue. Nesbitt commented to the others: "Man, let's murk her, we don't need no witnesses, let's murk her." [Trial] Tr. p. 293. Spears overheard the argument and saw Nesbitt, Pettrie and Dingle outside her house. Spears also observed Pettrie having sex with M.B., and she contacted the police.

The group then drove to another location where the sexual attacks continued. At some point, M.B. heard two gunshots. When she turned around, M.B. saw that Johnson and Dingle had been shot, and that Nesbitt was holding a gun. Dingle subsequently died from his gunshot wounds. Nesbitt then handed the gun to Pettrie and told him to "do her." Tr. p. 208, 210, 270, 276. In response, Pettrie shot M.B. in the shoulder and in the head. Pettrie and Nesbitt then fled the scene and buried the pistol.

Johnson v. State, No. 71A03-0402-CR-102, slip op. at 2-4 (Ind. Ct. App. Nov. 5, 2004) (footnote omitted). M.B. and Johnson survived.

The State charged Johnson with Class C felony robbery, Class B felony rape, Class B felony criminal deviate conduct, and felony murder. Johnson was represented by James Miller at his jury trial. Pursuant to a plea agreement with the State, Pettrie testified

against Johnson. Although Johnson testified on his own behalf, he was convicted of all of the charges except the felony murder charge.

On direct appeal, Johnson was represented by Mark Kopinski, who raised several issues, including ineffective assistance of trial counsel. A panel of this court affirmed Johnson's convictions and sentence. Johnson petitioned for transfer, which was granted, and our supreme court summarily affirmed our disposition of all of the issues except the sentencing issue. See Johnson v. State, 830 N.E.2d 895, 897 (Ind. 2005). Ultimately, our supreme court affirmed Johnson's sentence. See id. at 898.

In 2011, Johnson filed a pro se amended petition for post-conviction relief in which he raised the following issues: 1) ineffective assistance of trial counsel; 2) ineffective assistance of appellate counsel; 3) contamination of DNA evidence; 4) newly-discovered evidence; 5) prosecutorial misconduct; and 6) actual innocence. On January 13, 2012, a hearing was conducted on the post-conviction relief petition at which Johnson proceeded pro se. Johnson called Kopinski, the prosecutor, and Nesbitt as witnesses. At the conclusion of the hearing, the post-conviction court ruled against Johnson on the ineffective assistance of appellate counsel, newly-discovered evidence, prosecutorial misconduct, and actual innocence claims. However, because Miller was not available to testify at that hearing, the post-conviction court did not rule on the ineffective assistance of trial counsel claim or the DNA issue and continued the matter.

Johnson then retained counsel and filed a motion for leave to amend his petition for post-conviction relief. In the motion, Johnson acknowledged that his freestanding claim of ineffective assistance of trial counsel could not be raised in a post-conviction

4

relief proceeding because it was raised and addressed on direct appeal. He asserted that he was required to "bootstrap" the ineffective assistance of trial claim to an ineffective assistance of appellate counsel claim. App. p. 59. Johnson requested to amend his post-conviction relief petition as follows:

> Appellate counsel was ineffective for raising a claim of ineffective assistance of trial counsel because Petitioner cannot raise his meritorious trial counsel ineffectiveness issues in a post-conviction proceeding. If a claim of ineffective assistance of trial counsel is raised on direct appeal, the issue will be foreclosed from collateral review. . . .

Id. at 60. The post-conviction court denied the motion to amend.

At the second hearing, Johnson abandoned his challenge to the DNA evidence. Regarding the ineffective assistance of trial counsel claim, post-conviction relief counsel acknowledged that the motion to amend had been denied and explained, "We certainly want to present our testimony today, I guess as an offer of proof. But without that amendment, he's going to be foreclosed from being able to litigate that issue." Tr. p. 125. The post-conviction court agreed and did not revisit its ruling on the motion to amend.

Miller, Pettrie, and Johnson testified at the hearing. At the conclusion of the hearing, the parties discussed filing proposed findings and conclusions, and the prosecutor asked if they should address the issues that had already been decided. The post-conviction court responded, "Well, at this point, I'm not going to limit those to that. I mean, I do want to issue a final order with respect to everything, so I'm not going to say you can't give me information on this or that." Id. at 148.

5

The post-conviction court issued an order denying Johnson's petition. The post-conviction court stated that it had resolved issues 2, 4, 5 and 6 at the January 13, 2012 hearing, that Johnson moved to amend the petition for post-conviction relief, and that it had denied the motion. Regarding the resolution of those issues, the post-conviction court concluded, "Accordingly, the Court having previously ruled on these issues, the Court makes no further findings on Johnson's Issues Numbered 2, 4, 5, and 6." App. p. 110.

The post-conviction court then addressed the ineffective assistance of trial counsel claim and stated, "Notwithstanding the fact that Johnson, having raised on direct appeal, the claim of ineffectiveness of trial counsel, no evidence was adduced, or argued that would satisfy Johnson's burden of proof that his trial counsel was, in fact, ineffective." Id. at 111. The post-conviction court made several findings about trial counsel's performance and concluded, "because trial counsel was not ineffective with respect to these issues, neither was appellate counsel for failing to raise the same issues on appeal." Id. at 112. The post-conviction court also rejected Johnson's newly-discovered evidence claim as it related to Nesbitt's and Pettrie's post-conviction relief hearing testimony because neither presented credible testimony nor was their testimony likely to produce a different result at trial. Johnson now appeals.

**Analysis**

"The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence." Kubsch v. State, 934 N.E.2d 1138, 1144 (Ind. 2010). Because a petitioner appealing the denial of post-conviction

6

relief is appealing from a negative judgment, to prevail on appeal, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. Id. Further, although we do not defer to a post-conviction court's legal conclusions, the court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made. Id.

## I. Ineffective Assistance of Appellate Counsel

On appeal, Johnson argues that "appellate counsel was ineffective for raising an ineffective-assistance-of-trial-counsel claim on direct appeal, thereby foreclosing Johnson from raising this as a freestanding claim on post-conviction."[1] Appellant's Br. p. 11. Johnson claims it was deficient performance to raise an ineffective assistance of trial counsel claim on direct appeal because there was not a sufficient record and not all claims of trial counsel ineffectiveness were raised. Johnson also claims he was prejudiced by appellate counsel's decision to raise the issue on direct appeal because, if the issue had been available for post-conviction relief proceedings, he could have established that trial counsel was ineffective for not presenting a duress defense and not calling Nesbitt as a witness at trial. Johnson claims this particular claim of ineffectiveness is properly before us because "at the end of the second evidentiary hearing the post-conviction court allowed the parties to submit proposed findings on all

---

[1] It is undisputed that, because ineffective assistance of trial counsel was raised and addressed on direct appeal, it was not available as a freestanding claim of error in post-conviction relief proceedings. See Woods v. State, 701 N.E.2d 1208, 1220 (Ind. 1998) (holding that, if ineffective assistance of trial counsel is raised on direct appeal, the issue will be foreclosed from collateral review.), cert. denied.

of Johnson's issues. Furthermore, in its order denying Johnson relief, the post-conviction court chose to address Johnson's claims on their merits." Id. at 11 n.1.

In response, the State contends that appellate counsel was not ineffective regarding the issues he did raise and was not ineffective regarding the issues he did not raise. Although the State does not address whether this claim of ineffective assistance of appellate counsel is properly before us, we conclude that it is not.

In his 2011 amended petition for post-conviction relief, Johnson raised ineffective assistance of trial counsel as a freestanding claim of error and argued that appellate counsel was ineffective. At the conclusion of the first evidentiary hearing, the post-conviction court denied Johnson's ineffective assistance of appellate counsel claim. Johnson then sought to amend the petition to "bootstrap" an ineffective assistance of trial counsel claim to the ineffective assistance of appellate counsel claim. The post-conviction court denied Johnson's motion to amend and, even though the post-conviction court made findings about trial counsel's performance, nothing in the record suggests the post-conviction court intended this issue to be a basis for granting Johnson post-conviction relief. Because the post-conviction court denied the motion to amend, and Johnson does not challenge the post-conviction court's ruling on that motion, we are not convinced this claim is properly before us now.

In any event, even if Johnson had been permitted to pursue his ineffective assistance of trial counsel claim via an amended ineffective assistance of appellate counsel claim, he has not established that he was prejudiced by appellate counsel's purportedly deficient performance. "To establish a post-conviction claim alleging the

8

violation of the Sixth Amendment right to effective assistance of counsel, a defendant must establish before the post-conviction court the two components set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984)." Kubsch, 934 N.E.2d at 1147. First, a defendant must show that counsel's performance was deficient by establishing that counsel's representation fell below an objective standard of reasonableness and that "'counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed to the defendant by the Sixth Amendment.'" Id. (quoting Strickland, 466 U.S. at 687, 104 S. Ct. at 2064). A defendant must also show that the deficient performance prejudiced the defense by establishing there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. "Further, counsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." Id. "The standard of review for appellate counsel is the same as for trial counsel in that the defendant must show appellate counsel was deficient in his or her performance and that the deficiency resulted in prejudice." Garrett v. State, 992 N.E.2d 710, 719 (Ind. 2013).

Regarding the defense of duress, "It is a defense that the person who engaged in the prohibited conduct was compelled to do so by threat of imminent serious bodily injury to himself or another person." Ind. Code § 35-41-3-8(a). However, the defense of duress does not apply to a person who "committed an offense against the person as defined in IC 35-42." I.C. § 35-41-3-8(b)(2). Johnson contends that this defense was available to him because he was convicted as an accomplice and, therefore, the

9

"prohibited conduct" was not rape or criminal deviate conduct but rather him driving the other men around while they committed the offenses.[2] I.C. § 35-41-3-8(a).

However, "[i]n Indiana, the responsibility of a principal and an accomplice is the same." Taylor v. State, 840 N.E.2d 324, 338 (Ind. 2006); see also I.C. § 35-41-2-4 ("A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense . . . .").  Moreover, the duress statute does not distinguish between committing an offense as a principal or an accomplice, and Johnson cites no authority to support his position.  Johnson was alleged to have committed robbery, rape, criminal deviate conduct, and felony murder and was convicted of all of those offenses except felony murder.  These offenses are listed in Indiana Code 35-42 and, therefore, are considered offenses against the person.  Cf. Kee v. State, 438 N.E.2d 993, 994 (Ind. 1982) (holding that attempted murder is an offense against the person as defined in I.C. 35-42 because the attempt statute, I.C. § 35-41-5-1, must be read in conjunction with the murder statute, I.C. § 35-42-1-1).  Thus, the defense of duress was not available to Johnson, and he has not established that the outcome of the trial would have been different had trial counsel pursued this defense.

Regarding the decision not to call Nesbitt as a witness at Johnson's trial, trial counsel testified at the post-conviction relief hearing that he did not call Nesbitt to testify because Nesbitt's deposition testimony was "negative towards Mr. Johnson" and Nesbitt "declined to testify, because his charges were still pending and he would have been able

---

[2]  We make no assessment of whether he was convicted as an accomplice or principal of the offenses against M.B., and Johnson does not specifically address the duress defense as it relates to the robbery conviction.

10

to invoke the Fifth Amendment." Tr. p. 132. Although Nesbitt initially testified favorably for Johnson at the post-conviction relief hearing and indicated he would have testified if he had been called, he later testified that he did not know if he would have testified because he did not know the law. Based on these facts, we cannot say that, had Nesbitt been called as a witness, there is a reasonable probability that the outcome of the trial would have been different.

Accordingly, Johnson has not established that he was prejudiced by appellate counsel's performance because, even if the ineffective assistance of trial counsel claim had be preserved for post-conviction proceedings, it would not have been successful. The post-conviction court properly rejected this claim.

## II. Newly-discovered Evidence

Johnson also argues that Pettrie's and Nesbitt's post-conviction relief hearing testimony constitutes newly-discovered evidence that warrants a new trial. New evidence will mandate a new trial only when the petitioner demonstrates that:

> (1) the evidence has been discovered since the trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence is worthy of credit; (8) it can be produced upon a retrial of the case; and (9) it will probably produce a different result at retrial.

Carter v. State, 738 N.E.2d 665, 671 (Ind. 2000). We analyze these nine factors with care, as "'[t]he basis for newly discovered evidence should be received with great caution and the alleged new evidence carefully scrutinized.'" Id. (citation omitted) (alteration in original).

11

Pettrie testified at Johnson's trial on behalf of the State pursuant to the terms of a plea agreement, which also called for the dismissal of felony murder and attempted murder charges against Pettrie. When Pettrie testified, he had not yet been sentenced. Pettrie's trial testimony implicated Johnson as a participant in the robbery, rape, and criminal deviate conduct. At the post-conviction relief hearing, Pettrie testified that he threatened Johnson with the gun and told him to drive and that Johnson was upset and scared. Pettrie also testified that Johnson tried to stop the other men from having sex with M.B., that he did not see Johnson having sex or oral sex with M.B, and that Johnson did not plan the robbery or participate in it.

The post-conviction court, in analyzing the nine Carter factors, found that Pettrie's post-conviction relief hearing testimony was not credible and would not produce a different result at retrial because the defense of duress was not available to Johnson, M.B. testified that Johnson participated in the rape and criminal deviate conduct, and Johnson's trial testimony was controverted by M.B.'s testimony and DNA evidence. Johnson's challenge to the post-conviction court's findings is a request to reweigh the evidence, which we cannot do.

At trial, Pettrie testified to giving two previous versions of events, making his post-conviction testimony a fourth version. Pettrie also testified at the post-conviction relief hearing that he recently had been moved to the same prison as Johnson, further reducing his credibility. Also, as we have already concluded, the defense of duress is not available to Johnson, and M.B. testified that she was forced to engage in sex and oral sex with Johnson. Accordingly, Johnson has not established that the evidence as a whole

12

leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court.

Regarding Nesbitt, charges were still pending against him at the time of Johnson's trial, and he was not called as a witness. At the post-conviction relief hearing, Nesbitt testified that the robbery was not preplanned, that Johnson was not involved in it, that Johnson did not have sex or oral sex with M.B., and that Johnson appeared intimidated. Nesbitt also could not remember what he initially told police and would not testify about the shootings. Nesbitt testified that he was pursuing post-conviction relief. When questioned whether he hoped Johnson would testify for him at his post-conviction relief hearing, Nesbitt answered, "That's his opinion, if he wants to." Tr. p. 104.

Regarding the Carter factors, the post-conviction court was not convinced that Nesbitt's testimony was newly-discovered and found that Nesbitt's testimony was not credible because many of his answers were evasive and because he was concerned about the outcome of his own post-conviction relief proceeding. The post-conviction court also found that the testimony could not be reproduced at retrial and would not produce a different result at retrial.

Again, Johnson's argument on this issue is a request for us to reweigh the evidence, which we cannot do. The evidence does not show that Nesbitt's post-conviction relief hearing testimony was credible or likely to produce a different outcome at retrial even if it could be reproduced or was considered with Pettrie's most recent testimony. Johnson has not established that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court.

13

**Conclusion**

The post-conviction court properly denied Johnson's ineffective assistance of appellate counsel claim and his claim of newly-discovered evidence. We affirm.

Affirmed.

MAY, J., and PYLE, J., concur.