**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



APPELLANT PRO SE:

**KENNETH KELLY**
Carlisle, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KENNETH KELLY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 30A01-1112-PC-612 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HANCOCK SUPERIOR COURT
The Honorable Terry Snow, Judge
The Honorable Larry Amick, Judge Pro Tem
Cause No. 30D01-0607-PC-127

**September 19, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Kenneth Kelly appeals the denial of his petition for post-conviction relief. We affirm.

## Issue

Kelly raises four issues, which we consolidate and restate as whether he was constructively denied counsel at his competency and sentencing hearings.

## Facts

On August 25, 2004, the State charged Kelly with murder. Attorneys James McNew and Andria Kerney represented Kelly. A plea agreement was filed on September 2, 2004, and a guilty plea hearing was held on November 8, 2004. According to the plea agreement, in exchange for his guilty plea to the murder charge, the prosecutor would recommend a sentence of fifty-five years executed. The agreement also called for Kelly to cooperate in the investigation of the murder and to testify truthfully regarding any other person's involvement in the murder.

On December 15, 2004, McNew filed a motion for determination of competency after Kelly apparently made a suicide pact with a co-defendant. A competency hearing and a sentencing hearing were scheduled for January 25, 2005. On January 25, 2005, Kelly's attorneys filed a motion to withdraw, which referenced Indiana Professional Conduct Rule 1.6(b)(2). At the beginning of the hearing, the trial court announced that it would deal with the motion to withdraw at the conclusion of the hearing.

During the competency hearing, McNew argued that Kelly was not competent to assist in his defense. Relying on the reports of Dr. Ned Masbaum and Dr. Don Olive, however, the trial court found Kelly to be competent.

At the conclusion of the competency hearing, the State moved to continue the sentencing hearing. The State's request was based on Kelly's attorneys' reference to Professional Conduct Rule 1.6(b)(2) in the motion to withdraw. The prosecutor argued that the Rule:

> says that a lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary to prevent the client from committing a crime or from committing fraud that is reasonably certain to resolve [sic] substantial injury to the financial interest or property of another and in furtherance of which the client has used or is using the lawyer's services. Certainly your honor, uh the State believes that such an allegation is being made, that there is fraud either attempted to be perpetrated on this Court or going to be perpetrated on this Court which is how I read the statement on the Amended Motion to Withdraw – the State must, in all interests of justice, be allowed time to investigate such an allegation, to investigate uh – what is going on at the present time rather than push forward with the sentencing hearing that could resolved [sic] in a miscarriage of justice for the victims of this crime and for the citizens of the County and the State of Indiana . . . .

App. p. 29. When asked to respond, McNew said he understood the trial court's procedure regarding ruling on the motion to withdraw and stated, "I stand on my Motion to Withdraw." Id. The trial court reiterated that it would deal with the motion to withdraw immediately after the sentencing hearing. The trial court then asked McNew if he requested any continuance of the sentencing hearing on behalf of Kelly. McNew responded:

3

> Your honor, I am reluctant to go any further in my representation of Mr. Kelly – I would like to point out to the Court that I find a distinction between the Court's analysis of what is presented before the Court today – the Competency Hearing was an issue that arose and was in fact brought to the Court's attention by myself – when I did represent and had every intention of representing Mr. Kelly . . . . Secondly, however, the Court now wishes to proceed to a sentencing hearing after I have now filed my Motion to Withdraw my Appearance for the professional reasons I have outlined. I am very uncomfortable with the anaclisis [sic] that the Court has made and now the Court is putting me in a position to either agree or not object to a continuance made by the State on behalf of my client who, I am of the frame of mind, that I no longer represent and I am unable to in my professional mind to do so adequately on behalf of Mr. Kelly. I am no longer aware what is in my client's best interests because as previously stated, I do not believe Mr. Kelly is aware as to what is in his best interests.

Id. at 30-31. The trial court stated that it understood and viewed McNew as not taking a position on the issue of continuing the sentencing hearing other than to reiterate the request to withdraw. The trial court ultimately denied the State's request for a continuance.

After a short recess, the parties reconvened for the sentencing hearing. The State renewed its motion to continue based on McNew's statement that he could not represent Kelly because of his belief that Kelly was incompetent. The prosecutor stated:

> we believe that any hearing that would proceed could create an issue on appeal no matter which way this Court ruled as to whether or not Mr. Kelly is represented at this hearing – certainly based upon the state of counsel basically saying he is not representing Mr. Kelly uh – at the competency hearing and I would believe based upon that statement the same would hold true at this hearing, therefore I think we have an unrepresented claim here – at least in the eyes of the appellate court . . . I believe the appellate court would say that he is not

4

competent at the present time to be counsel for Mr. Kelly based upon his own beliefs in this statement.

Id. at 33. McNew had no response. The trial court explained that Kelly "is represented by counsel, remains represented by counsel," and that he has been found to be competent. Id. The trial court again denied the State's motion to continue. The State then requested the trial court to stay sentencing so that it could pursue an interlocutory appeal and certify the issues for interlocutory appeal. The trial court denied the State's request.

The trial court then questioned Kelly about the accuracy of the presentence investigation report and about the presentence addendum. No witnesses were called on behalf of Kelly or the State. The trial court read into the record a letter from the victim's family that had been included in the presentence addendum. When asked by the trial court, Kelly and the prosecutor said there was no reason not to accept the plea agreement and to sentence Kelly pursuant to it. The trial court explained its role in the sentencing process in light of the plea agreement, specifically that "it can accept or reject his agreement – it cannot modify it." Id. at 41. The trial court noted that the aggravators of murder for hire and lying in wait could have been a basis for the State to pursue either the death penalty or life without parole. After analyzing the actual aggravators and mitigators at issue, the trial court accepted the plea agreement and sentenced Kelly to fifty-five years executed. After Kelly was removed from the courtroom, the trial court granted the motion to withdraw.

On April 19, 2010, Kelly filed a petition for post-conviction relief, asserting that he was denied effective assistance of counsel at the competency and sentencing hearings.

5

His petition was summarily denied. Kelly appealed, and we reversed and remanded for an evidentiary hearing. See Kelly v. State, 952 N.E.2d 297 (Ind. Ct. App. 2011). On December 13, 2011, the post-conviction court held an evidentiary hearing, at which McNew testified. On December 14, 2011, the post-conviction denied Kelly's petition. The post-conviction court's findings and conclusions provided in part:

> 12. Court finds that Mr. McNew's statements during the sentencing where [sic], in fact, argument and once rejected by the Court, had no effect on his ability or desire to represent the best interest of his client.
>
> 13. It is clear by the transcript that the Defendant entered into a plea agreement, made no attempt to withdraw it, accepted the benefits of the agreement by limiting the State's ability to file additional counts or aggravators and has enjoyed the fruits of the agreement since 2005.
>
> 14. The Petitioner points to comments by the Deputy Prosecuting Attorney on this case, Mr. Nelson, indicating he didn't think that Mr. McNew was representing the Defendant and that he didn't think the Court of Appeals would accept that. However, the Court again notes that that was argument and the Court declined to accept said argument. Because the Deputy Prosecutor says it, doesn't make it so.
>
> * * * * *
>
> 18. Mr. McNew testified that the reason he felt uncomfortable in proceeding on, is because of the Defendant's statements to him indicating that he would not comply with the plea agreement thereby, leaving the Defendant open to additional and more severe charges and penalties which would be detrimental to his client's interest. However, once the Court declined to let him withdraw, Mr. McNew and Ms. Kerney proceed as attorney [sic] of record, representing the best interest of their client.

6

19. The record clearly reflects that Mr. McNew and Ms. Kerney represented the Petitioner, Kenneth Kelly, in a professional and competent manner.

20. The record reflects that Mr. McNew and Ms. Kerney were present during all of the critical stages of the prosecution, put in numerous hours of preparation, and were fully adversarial to the State up to and including the sentencing hearing where they ensured that the rights of the Defendant were protected.

Wherefore, the Court now finds that the Defendant, was, in fact, represented by competent counsel, that counsel was present during all critical stages of the prosecution, and that said representation was professional and effective and meets the requirements of the U.S. and Indiana Constitutions. Motion for Post Conviction relief is denied.

App. pp. 122-24. Kelly now appeals.

## Analysis

"The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence." Kubsch v. State, 934 N.E.2d 1138, 1144 (Ind. 2010). Because a petitioner appealing the denial of post-conviction relief is appealing from a negative judgment, to prevail on appeal, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. Id. Further, although we do not defer to a post-conviction court's legal conclusions, the court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made. Id.

"To establish a post-conviction claim alleging the violation of the Sixth Amendment right to effective assistance of counsel, a defendant must establish before the

7

post-conviction court the two components set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984)." <u>Id.</u> at 1147. First, a defendant must show that counsel's performance was deficient by establishing that counsel's representation fell below an objective standard of reasonableness and that "'counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed to the defendant by the Sixth Amendment.'" <u>Id.</u> (quoting <u>Strickland</u>, 466 U.S. at 687, 104 S. Ct. at 2064). A defendant must also show that the deficient performance prejudiced the defense by establishing there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>Id.</u> "Further, counsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." <u>Id.</u>

Kelly argues that he was constructively denied counsel at the competency and sentencing hearings. Kelly's argument is based on <u>United States v. Cronic</u>, 466 U.S. 648, 104 S. Ct. 2039 (1984).

> In <u>Cronic</u>, the Supreme Court recognized that in certain limited circumstances of extreme magnitude, prejudice to a criminal defendant is so likely that an inquiry into counsel's actual performance is not required. Stated differently, a presumption of ineffectiveness arises in certain extreme circumstances without resort to the traditional two-prong <u>Strickland</u> analysis. The Court in <u>Cronic</u> identified three circumstances justifying such a presumption: (1) the complete denial of counsel; (2) situations where counsel entirely fails to subject the prosecution's case to meaningful adversarial testing; and (3) situations where surrounding circumstances are such that, "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so

8

> small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial."

Ward v. State, 969 N.E.2d 46, 77 (Ind. 2012) (quoting Cronic, 466 U.S. at 659-60, 104 S. Ct. at 2047) (citations omitted).

According to Kelly, his attorneys entirely failed to subject the State's case to meaningful adversarial testing. Regarding the competency hearing, Kelly claims that, because McNew and Kerney did not believe they were counsel, they never conducted any investigation, did not provide any doctor or the trial court any information about Kelly, and did not attempt to litigate the competency determination in any way. The record does not support these assertions.

McNew repeatedly testified at the post-conviction relief hearing that he did represent Kelly until the trial court granted the motion to withdraw at the conclusion of the sentencing hearing. When Kelly questioned McNew about the statement McNew made at the conclusion of the competency hearing regarding the State's request for a continuance in which McNew indicated he was in the frame of mind that he no longer represented Kelly, McNew explained that those statements were part of his argument to the trial court regarding his professional concerns about continuing to represent Kelly without revealing conversations he had had with Kelly. McNew later explained at the post-conviction relief hearing that Kelly had informed McNew that he would not testify against his girlfriend, thereby not fulfilling the terms of the plea agreement. McNew was concerned that the State could then withdraw the plea agreement and seek the death

9

penalty or life without parole. When taken in context, McNew's statements do not establish that he did not actually represent Kelly at the competency hearing.

Likewise, the State's requests to continue and to stay sentencing pending an interlocutory appeal and the arguments in support of such do not conclusively establish that McNew did not represent Kelly at the competency hearing. A complete review of the record indicates that the prosecutor initially moved for a continuance out of concern that a fraud was being or was going to be perpetrated on the trial court, not out of concern that Kelly's right to counsel was not being fulfilled. Further, the mere fact that the prosecutor believed that proceeding with the sentencing hearing "could create an issue on appeal" and that McNew's statements created "an unrepresented claim" for appeal, does not establish that Kelly was actually denied the assistance of counsel at the competency hearing. App. p. 33.

To the contrary, at the competency hearing, McNew explained that he filed the motion for determination of competency after Kelly entered into a suicide pact with a co-defendant. The record indicates that two court-appointed doctors evaluated Kelly and concluded he was competent. McNew argued to the trial court that those reports were cursory in nature and identified Kelly as being anti-social and narcissistic and that Kelly was unable to assist McNew in his representation of Kelly. The record of the competency hearing shows that this was not a situation where counsel entirely failed to subject the State's case to meaningful adversarial testing.[1]

---

[1] In his brief Kelly suggests that his attorneys should have obtained records about Kelly's mental health history, and talked to his family, coworkers, and co-defendants about his mental state. Kelly, however,

As for the sentencing hearing, Kelly reiterates the statements made by McNew and the prosecutor between the competency hearing and sentencing hearing relating to the State's motion for a continuance. Again, these assertions were arguments by the parties and do not conclusively establish that counsel entirely failed to subject the prosecution's case to meaningful adversarial testing.

Although McNew was not particularly involved in the sentencing hearing, neither was the prosecutor, who only informed the trial court of the victim's family's desire to make a statement. During the hearing, the trial court questioned Kelly regarding the accuracy of the presentence investigation report and the presentence addendum, both of which Kelly had previously reviewed with counsel. Neither party called witnesses, and Kelly declined to make a statement regarding his sentence. Based on the terms of the plea agreement, which included a sentencing recommendation of fifty-five years, we cannot say that the lack of participation by McNew at the sentencing hearing conclusively establishes that he entirely failed to subject the prosecution's case to meaningful adversarial testing.

Instead, a complete review of the record shows that McNew had reviewed the case and it became apparent to him that aggravators existed that would have allowed the State to file death penalty or life without parole, that Kelly's co-defendants had been charged with murder and conspiracy to commit murder and the State was seeking sentences of life without parole, that Kelly, the shooter, who had killed a man in exchange for a car,

did not present any such evidence at the post-conviction relief hearing. This unsupported assertion does not establish that he was constructively denied his right to counsel.

11

secured a plea agreement in which the State recommended a sentence of fifty-five years, the presumptive sentence for murder, and that Kelly was contemplating reneging on the plea agreement, which would have allowed the State to pursue additional charges or a more severe penalty. McNew considered the plea agreement to be "reasonable" and "charitable." Tr. p. 14. Under these circumstances, Kelly has not shown that McNew's conduct at the sentencing hearing entirely failed to subject the prosecution's case to meaningful adversarial testing.[2]

Finally, Kelly argues that the trial court failed to recognize that he was not represented by counsel at the hearings and blatantly refused to allow Kelly or the State to pursue an interlocutory appeal. Kelly asserts that McNew had an affirmative duty to file an emergency writ of mandamus on the grounds that the trial court was unfaithful to the law and showed a rational inference of partiality in violation of the Code of Judicial Conduct. According to Kelly, McNew's failure to petition for a writ caused Kelly "to face 'armed gladiators', specifically, the State of Indiana without the benefit of counsel by his side." Appellant's Br. p. 7. Kelly claims that this amounted to deficient performance and caused him prejudice, "whereby he was constructively deprived of any counsel whatsoever, which satisfies the narrow category of situations where prejudice is presumed." Id. at 8. Quite simply, we do not agree with Kelly that the failure to

---

[2] Kelly also suggests that, had he enjoyed the benefit of counsel during the sentencing hearing, he would have been informed that he could set aside his guilty plea pursuant to Indiana Code Section 35-35-1-4. The fact that Kelly was not informed of this statutory provision, without more, does not establish that he was constructively denied counsel.

immediately challenge the trial court's rulings constructively deprived him of the right counsel under <u>Cronic</u>.[3]

Under these circumstances, we will not presume that counsel was ineffective at the competency and sentencing hearings under <u>Cronic</u>. Kelly has not established that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. The post-conviction court properly denied Kelly's petition.

## Conclusion

Kelly has not established that the post-conviction court erroneously denied his petition for post-conviction relief. We affirm.

Affirmed.

VAIDIK, J., and MATHIAS, J., concur.

---

[3] Although Kelly initially frames this claim as a claim of ineffective assistance of counsel under <u>Strickland</u>, the substance of the claim appears to be based on <u>Cronic</u>, and we review it as such.