## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 30 2019, 8:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Howard Harris
Pendleton, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Howard Harris,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

May 30, 2019

Court of Appeals Case No.
18A-PC-1389

Appeal from the Marion Superior Court

The Honorable Amy J. Barber, Magistrate

The Honorable Marc Rothenberg, Judge

Trial Court Cause No.
49G02-0603-PC-43071

**Tavitas, Judge.**

# Case Summary

Howard Harris, pro se, appeals the post-conviction court's ("PC court") denial of his petition for post-conviction relief. We affirm.

# Issues

Harris raises several issues, which we revise and restate as:

  I.     Whether Harris' freestanding claim fails.

  II.    Whether Harris was entitled to post-conviction relief based on newly discovered evidence.

  III.   Whether Harris was denied the effective assistance of trial counsel.

  IV.    Whether Harris was denied the effective assistance of appellate counsel.

# Facts

The facts as stated in Harris' direct appeal follow:

> During the evening of February 1, 2006, Royal Amos ("Amos") called Keyonia Dunn ("Dunn"), his ex-girlfriend, who was pregnant with his child, demanding that she surrender her SSI disability check to him. Amos threatened to kill Dunn if she did not comply.
>
> Later that same evening, Harris drove Amos to Dunn's Indianapolis apartment. Inside the apartment, Dunn, her roommate Erika Thornton ("Thornton"), and their four children were sleeping. Harris broke through the door, and Amos entered the apartment armed with a handgun. Amos fired multiple gunshots into Dunn, Thornton, and their children. When he ran out of bullets, Amos began to bludgeon the children. Harris and

Amos ran in different directions, and Amos disposed of the gun by throwing it behind a residence. The pair met up later that evening and fled to Kentucky together.

At approximately 11:00 p.m. that evening, David Torres ("Torres") was walking his dog through the apartment complex when he heard children crying. As he approached the three children, Torres could see that they were covered in blood. The two older children were carrying their five-year-old brother, who had sustained multiple gunshot wounds. Torres and another apartment resident assisted the children and called 9-1-1. Police found Dunn and Thornton dead inside their apartment, and Dunn's two-year-old child gravely wounded. Each of the children survived.

Once they learned of Amos's threats against Dunn, the Indianapolis Metropolitan Police Department ("IMPD") issued an "attempt to locate homicide suspect" bulletin to other law enforcement jurisdictions and began to track activity on Amos's and Harris's cell phones. (Tr. 244.) As the investigation progressed, Amos and Harris were tracked to Bowling Green, Kentucky and later Bloomington, Indiana. Amos and Harris were arrested in Bloomington.

*Harris v. State*, No. 49A04-0708-CR-451 (Ind. Ct. App. Mar. 7, 2008), *trans. denied*.

[4] On March 8, 2006, the State charged Harris with two counts of murder; four counts of attempted murder, Class A felonies; burglary, a Class A felony; two counts of aggravated battery, Class B felonies; and four counts of battery, Class B felonies. In July 2006, the State filed a motion to amend the charging information to add two counts of felony murder. On the first day of the jury

trial in June 2007, the State moved to dismiss the two counts of aggravated battery, which the trial court granted.

[5] The jury found Harris guilty of two counts of murder; four counts of attempted murder, Class A felonies; burglary, a Class A felony; four counts of battery, Class B felonies; and two counts of felony murder. On July 11, 2007, the trial court vacated the convictions for felony murder and battery and sentenced Harris to an aggregate sentence of 260 years.

[6] On direct appeal, Harris argued that: (1) the trial court abused its discretion by allowing testimony referencing omissions in the probable cause affidavit; (2) the State presented insufficient evidence to support his convictions because the testimony of two primary witnesses was incredibly dubious; and (3) his sentences were inappropriate. We affirmed, and our Supreme Court denied Harris' petition for transfer.

[7] In January 2009, Harris filed a petition for post-conviction relief, which he amended twice, and later filed a petition to withdraw his petition without prejudice. The PC court granted his petition to withdraw. In June 2013, Harris again filed a petition for post-conviction relief, which he amended numerous times. Ultimately, Harris claimed that: (1) he received ineffective assistance of trial counsel; (2) he was entitled to a new trial based on newly discovered evidence; and (3) he received ineffective assistance of appellate counsel. After an evidentiary hearing, the PC court denied Harris' petition for post-conviction relief. Harris now appeals.

# Analysis

[8] Our Supreme Court has stated:

> The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. [Where, as here, a post-conviction court has made findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we] do not defer to the post-conviction court's legal conclusions[.] A post-conviction court's findings and judgment will be reversed only upon a showing of clear error – that which leaves us with a definite and firm conviction that a mistake has been made.

*Hollowell v. State,* 19 N.E.3d 263, 268-69 (Ind. 2014) (internal quotations and citations omitted). As the clearly erroneous standard "is a review for sufficiency of evidence, we neither reweigh the evidence nor determine the credibility of witnesses." *State v. Greene,* 16 N.E.3d 416, 418 (Ind. 2014). "Rather, we 'consider only the evidence that supports that judgment and the reasonable inferences to be drawn from that evidence.'" *Id.* (quoting *Ben-Yisrayl v. State,* 738 N.E.2d 253, 258-59 (Ind. 2000), *cert. denied,* 534 U.S. 1164, 122 S. Ct. 1178 (2000)).

## I. Freestanding Claim

Harris argues that fundamental error occurred when the trial court allowed felony murder charges to be added after the commencement of the trial. Postconviction procedures do not afford a petitioner with a super-appeal, and not all issues are available. *Timberlake v. State*, 753 N.E.2d 591, 597 (Ind. 2001), *cert. denied*, 537 U.S. 839, 123 S. Ct. 162 (2002). Rather, subsequent collateral challenges to convictions must be based on grounds enumerated in the postconviction rules. *Id.* If an issue was known and available, but not raised on direct appeal, it is waived. *Id.* "Freestanding claims of fundamental error are not available in post-conviction proceedings." *Hinesley v. State*, 999 N.E.2d 975, 988 (Ind. Ct. App. 2013), *trans. denied*. Because this issue was known and available on direct appeal but not raised, Harris' claim is not available as a freestanding claim of fundamental error in a petition for post-conviction relief.

## II. Newly Discovered Evidence

Harris argues that his "due [p]rocess [r]ights [were] violated when the State knowingly presented perjured testimony from its case-in-chief witness Brian Wynne." Appellant's Br. p. 20. The State and the PC court addressed this issue in the context of newly discovered evidence.

Indiana Post-Conviction Rule 1(1)(a)(4) provides that post-conviction relief is available to any "person who has been convicted of, or sentenced for, a crime by a court of this state, and who claims" that "there exists evidence of material

facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice."

> [N]ew evidence will mandate a new trial only when the defendant demonstrates that: (1) the evidence has been discovered since the trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence is worthy of credit; (8) it can be produced upon a retrial of the case; and (9) it will probably produce a different result at retrial.

*Kubsch v. State*, 934 N.E.2d 1138, 1145 (Ind. 2010). The burden of proving all nine requirements rests with the petitioner for post-conviction relief. *Id.*

[12] During Harris' trial, Wynne testified that he was incarcerated with Harris and that Harris confessed his involvement in the offenses to Wynne. Wynne testified regarding a benefit he received for his testimony with respect to charges that had been pending against him in Marion County. He also testified that additional charges had been filed against him in Marion County and Johnson County and that he was not expecting a benefit with respect to those charges in exchange for his testimony. Wynne, however, was hopeful to receive a benefit in the future.

[13] According to Harris, the "newly discovered evidence" at issue here is testimony given by the Marion County deputy prosecutor at the September 2007 sentencing hearing in Wynne's Johnson County case. The Marion County deputy prosecutor testified that, with respect to the Marion County pending

cases, following Wynne's testimony in Harris' trial, she had directed that: (1) a habitual offender allegation not be filed; (2) Wynne receive concurrent sentences; and (3) the sentences be concurrent with the sentences from the Johnson County charges. The Marion County deputy prosecutor testified that she did not intervene with respect to the Johnson County cases. The Johnson County trial court did not give Wynne "any additional break" because of the "substantial break that [Wynne] already received in Marion County." Exhibit Vol. I p. 98.

[14] The PC court rejected Harris' argument as follows:

> 15. Brian Wynne testified at length, both in direct examination and on cross, about his legal troubles, his existing plea agreement, and his hopes for future help from the State with his testimony. He told the jurors he would "be foolish" not to hope for a deal on the new cases. Transcript, p. 493. The Marion County prosecutor, Denise Robinson, testified at Wynne's sentencing hearing on 12/20/07: "I had told Brian prior to his testimony in Marion County that I would offer him nothing for the testimony that he was going to, I expected him to keep his word and do what he said he was going to do." Ex. V, p. 26. And while she did assist with the concurrent plea in Johnson County, that was long after Petitioner's trial was complete and not completely unforeseen. The jurors were well aware that Wynne was treated favorably by the State for his cooperation. The jurors were well aware that Wynne hoped for continued favorable treatment from the State, which after all, is what Petitioner claims is the motivating factor for Wynne to testify. All of this amounts to material that is merely impeachment. And Petitioner never questioned Denise Robinson about the course of events in this matter, even though the Court bifurcated his PCR hearing for her to appear and she did appear. (The Court also

notes that Wynne did not exactly benefit in Johnson County - he received a lengthy sentence that he appealed as being unreasonable. The Court of Appeals found otherwise).

16. The Court finds that this evidence does not meet the requirements as "newly-discovered" evidence; Petitioner has failed to meet his burden of proof on this issue.

Appellant's App. Vol. I pp. 42-43.

[15] We agree with the PC court that the newly discovered evidence does not entitle Harris to a new trial. This evidence is merely impeaching. Moreover, the jury was well aware that Wynne had received a benefit for his testimony at Harris' trial and that Wynne hoped to receive a benefit with respect to his additional pending charges in Marion and Johnson counties. The additional evidence of a benefit to Wynne with respect to his new charges would be unlikely to produce a different result if Harris was granted a new trial. The PC court's finding on this issue is not clearly erroneous.

### III. Ineffective Assistance of Trial Counsel

[16] Harris argues that he received ineffective assistance of trial counsel. To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that: (1) his or her counsel's performance was deficient, and (2) the petitioner was prejudiced by the deficient performance. *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)), *cert. denied*, 534 U.S. 830, 122 S. Ct. 73 (2001). A counsel's performance is deficient if it falls below an objective standard of

reasonableness based on prevailing professional norms. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002). To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. Failure to satisfy either prong will cause the claim to fail. *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006). Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. *Id.*

### A. Motion to Suppress

[17] Harris argues that his trial counsel should have moved to suppress "false statements submitted by Detective Rogers in his Probable Cause Arrest affidavit." Appellant's Br. p. 10. The probable cause affidavit prepared by Detective William Rogers discusses "voluntary statements" made by Harris to Detective Rogers and Detective Gullion. Harris seems to imply that statements were not "voluntary" and that Detective Rogers' statements in the probable cause affidavit were not truthful.[1] Appellant's Br. p. 11. Harris, however, cites no evidence to support his assertions. Harris' argument is waived for failure to make a cogent argument. *See* Ind. Appellate Rule 46(A)(8)(a); *Silvers v. State*,

---

[1] In his reply brief, Harris argues that his statements should have been recorded pursuant to Indiana Evidence Rule 617. This rule, however, was adopted in 2011, long after Harris' arrest and trial.

114 N.E.3d 931, 937 n.1 (Ind. Ct. App. 2018) (holding that an argument was waived for failure to support it with cogent reasoning).

### B. Objection to Testimony by Detective Rogers and Detective Gullion

[18] Next, Harris contends that his trial counsel should have objected to trial testimony by Detective Rogers and Detective Gullion. Harris argues that Detectives Rogers and Gullion committed perjury by testifying that Harris made the voluntary statements as they were *entering* the interview room, whereas the probable cause affidavit stated that the statements were made *in* the interview room. According to Harris, his trial counsel should have objected to the "perjured" testimony. Appellant's Br. p. 11.

[19] "[T]o prevail on a claim of ineffective assistance due to the failure to object, the defendant must show an objection would have been sustained if made." *Overstreet v. State*, 877 N.E.2d 144, 155 (Ind. 2007), *cert. denied*, 555 U.S. 972, 129 S. Ct. 458 (2008). Harris fails to demonstrate how this minor inconsistency would have made the testimony of Detectives Rogers and Gullion inadmissible or how an objection by his trial counsel would have been sustained. Further, even if trial counsel had objected and the objection had been sustained, Harris fails to demonstrate how the outcome of his trial would have been different based on this very minor discrepancy. Accordingly, Harris' argument fails.

### C. Failure to Investigate Regarding Wynne

[20] Harris argues that his trial counsel failed to perform an investigation of Wynne to discover "several pending plea offers in place for Wynne's continued

cooperation." Appellant's Br. p. 13. As noted above, during Wynne's testimony, he mentioned that he had pending charges in Marion and Johnson counties. Harris, however, presented absolutely no evidence that Wynne had pending plea offers in those cases for his continued cooperation at the time of Harris' trial. Harris has failed to demonstrate that his trial counsel was deficient on this issue. Moreover, as the State notes, the jury was well aware that Wynne had received a benefit in exchange for his testimony and that he was hopeful to receive more benefits. Harris has failed to demonstrate how he was prejudiced by his trial counsel's alleged deficiency.

### D. Failure to Depose Alibi Witnesses

[21] Harris argues that his trial counsel rendered ineffective assistance by failing to depose Cecciula Harris and Katherine Amos. According to Harris, these witnesses would have testified that Harris was with them at Chuck E. Cheese and Claude & Annie's on the evening of the murders. Harris, however, failed to present any evidence from these alleged alibi witnesses during his post-conviction relief hearing. *See, e.g., Hunter v. State*, 578 N.E.2d 353, 355 (Ind. 1991) ("[W]e have no idea what the witnesses would have testified about and have no basis to judge counsel's performance."). Harris' argument is waived for failure to make a cogent argument. *See* Ind. Appellate Rule 46(A)(8)(a); *Silvers*, 114 N.E.3d at 937 n.1. Moreover, given the lack of evidence regarding these proposed alibi witnesses' testimony, Harris has failed to demonstrate that his trial counsel's performance was deficient or that he was prejudiced by the alleged deficiency.

### E. Failure to Interview or Depose State's Witnesses

[22] Harris argues that his trial counsel rendered ineffective assistance by failing to interview or depose David Torres, Ebony Colbert, and Denise Johnson, who assisted the children after their mothers were killed until the police arrived. Again, Harris has failed to demonstrate that additional investigation or depositions of these witnesses would have produced additional relevant evidence or impacted his trial in any way. Given the lack of additional evidence, Harris has failed to demonstrate that his trial counsel's performance was deficient or that he was prejudiced by the alleged deficiency.

### F. Amendment of Charging Information

[23] Harris' next three arguments concern his trial counsel's failure to object to the amendment of the charging information on the day of the trial to add two felony murder charges. Harris' argument reflects a misunderstanding of the record.

[24] On March 8, 2006, the State charged Harris with two counts of murder; four counts of attempted murder, Class A felonies; burglary, a Class A felony; two counts of aggravated battery, Class B felonies; and four counts of battery, Class B felonies. In July 2006, the State filed a motion to amend the charging information to add two counts of felony murder. At a pre-trial conference on July 12, 2006, the parties discussed the proposed amendments, and Harris' trial counsel asked for a few days to "file a response if I have an objection." Appellant's App. Vol. I p. 83. The trial court took the motion under

advisement and gave Harris' trial counsel two weeks to "file any written objections that you have." *Id.* at 84. Harris' trial counsel did not file an objection to the amendment. Although the CCS does not reflect a grant of this motion to amend the charging information, the felony murder charges were considered at the jury trial without objection from Harris' trial counsel.

[25] On the first day of the jury trial in June 2007, the State moved to dismiss the two counts of aggravated battery, which the trial court granted. The State then requested another amendment of the charging information to correct "clerical" errors. Direct Appeal Tr. p. 9. Defense counsel agreed that the changes were "clerical" in nature and did not object. *Id.*

[26] Harris seems to believe that the clerical corrections to the charging information on the morning of the trial actually added the felony murder charges. The record, however, does not support Harris' assertion. The PC court noted that the "amendment" on the morning of the trial was merely "a re-numbering of the charges after the State dismissed two counts." Appellant's App. Vol. I p. 39. The PC court found "no substantive amendment" and no ineffective assistance of counsel based on this issue. *Id.* at 42. We agree. Harris' misunderstanding of the record does not establish that his trial counsel was deficient for failing to object to the amendment of the charges. Moreover, the guilty verdicts on the felony murder charges were vacated by the trial court on

double jeopardy grounds.  Harris cannot show prejudice from his trial counsel's alleged deficiency.[2]

### IV. Ineffective Assistance of Appellate Counsel

[27]   Next, Harris argues that he received ineffective assistance of appellate counsel. The standard of review for a claim of ineffective assistance of appellate counsel is the same as for trial counsel. *Ben-Yisrayl*, 729 N.E.2d at 106.  Our Supreme Court has held that ineffective assistance of appellate counsel claims "generally fall into three basic categories: (1) denial of access to an appeal, (2) waiver of issues, and (3) failure to present issues well." *Garrett v. State*, 992 N.E.2d 710, 724 (Ind. 2013).

[28]   Harris argues that his appellate counsel filed his appellant's brief for his direct appeal before the court reporter completed transcribing the trial transcripts.[3] According to Harris, his appellate counsel could not have properly reviewed and presented a complete appellant's brief.  The State correctly argues that Harris' claim is based on a "misunderstanding of appellate procedure." Appellee's Br. p. 33.  Under Indiana Appellate Rule 12(B)(1)(a), the transcript in a criminal appeal is not transmitted to the clerk of this court until the

---

[2] Harris also argues that he is entitled to relief based upon the cumulative errors of his trial counsel.  We have found no ineffective assistance of trial counsel based upon the individual errors presented by Harris, and his request for relief based on the cumulative effect of the alleged errors also fails.

[3] Harris also seems to argue that his appellate counsel should have presented other issues on appeal regarding the amended charging information and juror bias.  We have already rejected Harris' argument regarding the amended charging information, and Harris has waived the juror bias claim by failing to make a cogent argument.  *See* Ind. Appellate Rule 46(A)(8)(a).

appellant's brief has been filed. The transcript, thus, would have been available from the county clerk's office for Harris' appellate counsel to review prior to the filing of the appellant's brief. In fact, Harris' appellant's brief in his direct appeal contains many citations to the transcript. Accordingly, Harris' argument fails. The PC court properly denied Harris' claim of ineffective assistance of appellate counsel.

# Conclusion

[29] The PC Court properly denied Harris' petition for post-conviction relief. We affirm.

[30] Affirmed.

Baker, J., and May, J. Concur.