## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 30 2019, 5:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| APPELLANT PRO SE | ATTORNEYS FOR APPELLEE |
|---|---|
| Henry L. Newton<br>Carlisle, Indiana | Curtis T. Hill, Jr.<br>Attorney General of Indiana |
| | Chandra K. Hein<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Henry L. Newton,<br>*Appellant-Petitioner,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Respondent.* | July 30, 2019<br><br>Court of Appeals Case No.<br>18A-PC-1456<br><br>Appeal from the Vanderburgh<br>Circuit Court<br><br>The Honorable David D. Kiely,<br>Judge<br><br>The Honorable Kelli E. Fink,<br>Magistrate<br><br>Trial Court Cause No.<br>82C01-1404-PC-4 |

**Mathias, Judge.**

[1] Henry L. Newton ("Newton") filed a pro se petition for post-conviction relief in Vanderburgh Circuit Court. The post-conviction court denied Newton's petition, and Newton appeals pro se. Concluding that Newton has not established that he was subjected to ineffective trial and appellate counsel, we affirm.

## Facts and Procedural History

[2] In our memorandum decision on Newton's direct appeal, a panel of this court set forth the facts and initial procedural history underlying Newton's convictions as follows:

> About midnight on April 13, 2012, thirty-six-year-old Henry Newton, armed with a gun, broke into eighty-two-year-old James Moll's ["Moll"] home and threatened to kill him. Newton took Moll into the bathroom, tied his hands behind his back with an extension cord, and placed him on the floor on his back with his head against the end of the bathtub. Newton then took two debit cards from Moll's wallet, demanded that Moll give him the PIN to each card, and left Moll's house when Moll complied with his demand.

> Moll eventually freed himself around 8:30 the following morning and contacted the police. Evansville Police Department Detective Brent Melton ["Detective Melton"] was dispatched to Moll's home. When Moll told him about the stolen debit cards, Detective Melton contacted Fifth Third Bank. Three days later, the Bank notified Detective Melton that someone had withdrawn money from Moll's accounts by using the debit cards at two different ATM's. One card was used at an ATM near Moll's house about ten minutes after he was robbed, and the other card was used at an ATM at Casino Aztar about 9:30 the following morning. Evansville Police Department Detectives Tony Walker

["Detective Walker"] and Doug Hamner ["Detective Hamner"] watched the video surveillance footage from both ATM's and both detectives recognized Newton as a potential witness in a prior unrelated case. Detective Hamner also recognized Newton from the local library where the detective worked as an off-duty security officer.

Detective Melton arrested Newton at Newton's hotel room at approximately 11:30 a.m. on May 9, 2012. A judge issued a search warrant at 3:50 p.m. that same day. Detectives Melton and Hamner then searched Newton's room. During the search, the detectives found a fleece jacket with a distinctive New Orleans, LA, USA logo, a light blue button down shirt, a gray, red and white jacket, and a pair of black pants, all worn by Newton when he withdrew cash from the ATM's using Moll[]'s debit cards as shown in the surveillance videos. Detective Melton left a copy of the search warrant in Newton's motel room.

On May 14, 2012, the State charged Newton with burglary, a class A felony, criminal confinement, a class B felony, robbery resulting in bodily injury, a class B felony, armed robbery, a class B felony, and theft, a class D felony. The State also alleged that Newton was a habitual offender.

Before trial, Newton filed a motion to suppress all evidence found during the search of his motel room. Newton alleged that detectives violated his constitutional rights by searching his room before the search warrant was issued. The trial court denied Newton's motion after a hearing. At trial, during the cross-examination of Detective Hamner, defense counsel pointed out that the detective's report stated that he executed the search warrant at 3:15 p.m. but that the warrant was not issued until 3:50 p.m. Therefore, according to defense counsel, Detective Hamner must have searched Newton's motel room before the search warrant was issued. The detective explained that Newton's room was not searched until after the warrant was

issued. According to Detective Hamner, he distinctly remembered that Detective Melton had a copy of the search warrant with him when they searched the motel room. The detective further explained that the time on his report was incorrect. Thereafter, over Newton's objection, the trial court admitted the evidence found during the search of Newton's motel room.

Also before trial, the trial court granted Newton's Motion in Limine and instructed Detective Hamner that he could only testify that he recognized Newton in the Casino Aztar surveillance video because Newton was a potential witness in another unrelated investigation and they had also met at the local library where the detective was an off-duty police officer. Newton did not object to the detective's testimony at trial. However, when Detective Melton testified that he recognized Newton in the police surveillance video, Newton objected and asked for a mistrial. Newton's counsel told the trial court that an admonition would not correct the error. The trial court denied Newton's motion and instructed Detective Melton, as it did Detective Hamner pursuant to the terms of Newton's Motion in Limine, that he could only testify that he recognized Newton in the surveillance video because Newton was a potential witness in [] another unrelated investigation.

At trial, Moll testified that Newton tied his hands tightly behind his back with an extension cord and left him on his back with his head against the end of the bathtub. Moll[], who initially felt that he had no chance of loosening the cord, was subsequently able to scoot into the hallway and free himself after being tied up for approximately eight hours. When he freed himself, his wrists were swollen and hurt and his back hurt. A photograph introduced into evidence showed bruised and swollen wrists.

The jury convicted Newton of burglary as a class A felony, robbery as a class B felony, and theft as a class D felony. Newton pleaded guilty to being a habitual offender. The trial court sentenced him to thirty-five years for the class A felony, enhanced by thirty years for being a habitual offender. The court also sentenced Newton to twelve years for the class B felony. Specifically, the trial court explained at the sentencing hearing that it was not enhancing the sentence for the class B felony conviction because it did not believe it was appropriate to enhance more than one sentence. The court further sentenced Newton to two years for the class D felony and ordered the sentences to run concurrently for a total executed sentence of sixty-five years. Newton appeals.

*Newton v. State,* No. 82A05-1301-CR-22, slip op. at 1–2 (Ind. Ct. App. Aug. 30, 2013), *trans. denied.*

[3] On direct appeal, Newton presented four issues: (1) whether the trial court abused its discretion in failing to suppress evidence of a search that occurred prior to the issuance of a search warrant; (2) whether there was sufficient evidence to support his convictions for burglary and robbery causing bodily injury; (3) whether Newton's burglary and robbery convictions violated double jeopardy principles; and (4) whether the trial court abused its discretion in failing to grant a mistrial. A panel of this court rejected three of Newton's four claims, holding: (1) Newton's argument regarding the suppression of the evidence from the search was nothing more than an invitation for the court to reweigh the evidence, which the court cannot do; (2) the evidence was sufficient to support Newton's convictions because Moll testified that his back and wrists hurt, and a photograph showed Moll's wrists were bruised and swollen; (3)

Detective Melton's testimony at trial that he recognized Newton in the surveillance video was unlikely to have had a probable persuasive effect on the jury's decision and therefore did not warrant a mistrial; and (4) the burglary and robbery convictions were in violation of double jeopardy principles because the convictions were based on the same bodily injury, and as a result, our court reduced the robbery conviction to a Class C felony, reduced the sentence for the Class C felony robbery conviction to a four-year advisory sentence, and ordered it to run concurrently to the burglary conviction; *Id.* at 3–5. Newton filed a petition to transfer his case to the Indiana Supreme Court, but that court denied the petition.

[4] On April 3, 2014, Newton filed a pro se petition for post-conviction relief. In his petition, Newton claimed that he was denied the effective assistance of trial counsel and appellate counsel. Newton amended his petition four times, each time adding more claims of ineffective assistance of counsel. The post-conviction court held an evidentiary hearing on August 18 and 23, 2017. On November 15, 2017, Newton filed a motion for leave to amend his petition for post-conviction relief, which was denied because the post-conviction court had already conducted the evidentiary hearing on Newton's petition. Both parties then submitted proposed findings of fact and conclusions of law. On March 18, 2018, the post-conviction court issued its findings of fact and conclusions of law denying Newton's petition for post-conviction relief. The post-conviction court concluded that:

A review of the affidavit for the search warrant, identified as Petitioner's Exhibit G, does not support Petitioner's challenge to the finding of probable cause. The affidavit includes, but is not limited to, information describing the burglary and robbery of the victim and the subsequent use of the victim's debit card taken during the burglary at two separate ATM machines. Detective Hamner identified Petitioner as the suspect in the video using the ATM card. A challenge to the probable cause finding by the judicial officer who signed the search warrant would not have been successful. Further, there is no evidence that the officers were dishonest or reckless in the preparation of the affidavit.

***

Petitioner argues that if counsel had pursued an interlocutory appeal of the Court's denial of the Motion to Suppress, Detective Douglas Hamner's testimony would not have been considered because Detective Hamner did not testify at the suppression hearing, but only testified at the trial. However, under Indiana Rules of Appellate Procedure, Rule 14, an interlocutory appeal of a denial of a motion to suppress is a discretionary appeal. The grounds for granting an interlocutory appeal are listed in Rule 14(B)(1)(c)....

***

Under Rule 14 of the Indiana Rules of Appellate Procedure, the trial court would not have had to grant the request for an interlocutory appeal. It is unlikely that trial counsel would have been successful even if she had pursued an interlocutory appeal.

***

Detective Hamner testified based on his perception of the video[,] and his testimony was helpful to understand his testimony and also helpful to a determination of a fact in issue, that being the identity of the suspect in the case. It is unlikely that trial counsel would have been successful if she had continued to try to keep Detective Hamner's testimony from being presented to the jury.

\*\*\*

[The surveillance technical manager at Casino Aztar]'s testimony was based on his experience with the Casino Aztar system and based on his personal observations. Therefore, it was proper testimony to be presented to the jury. An objection to this testimony is unlikely to have been sustained.

\*\*\*

The issues that Petitioner argued should have been raised by appellate counsel were not more likely to result in reversal or a new trial than the issues appellate counsel actually did argue on Petitioner's direct appeal.

\*\*\*

As to Petitioner's argument that appellate counsel should have raise[d] insufficiency of the evidence arguments as to the element of the 'breaking' and the 'intent to commit a felony' as required for the offense of burglary, the jury can infer from the evidence that there was an intent to commit a felony. Petitioner's use of the debit card at two ATM's is evidence of his intent to commit a felony. The jurors could also infer that the suspect of the burglary committed a 'breaking' because the victim did not let anyone inside the residence and had not left any windows or doors open. While the description of the suspect by the victim alone would

not have been enough for identification purposes, Detective Hamner's identification of Petitioner on the video footage, along with the description by the victim, would have been enough together to prove identification.

\*\*\*

Petitioner's argument that Detective Melton was coached would also fail as an appellate issue. The testimony of Detective Melton was controlled and modified in a way to avoid having the jury hear about Petitioner previously being a suspect in another case. These efforts were made to protect Petitioner from any prejudice that might have resulted.

Appellant's App. Vol. II, pp. 32–38. Newton now appeals.

# Post-Conviction Standard of Review

Our standard of review of claims that a post-conviction court erred in denying relief is well settled. The post-conviction petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. *Willoughby v. State*, 792 N.E.2d 560, 562 (Ind. Ct. App. 2003), *trans. denied*. When a petitioner appeals the denial of a petition for post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* On appeal, we do not reweigh evidence nor judge the credibility of witnesses; therefore, to prevail, Newton must show that the evidence in its entirety leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id.* Where, as here, the post-conviction court makes findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we

do not defer to the court's legal conclusions, but the "findings and judgment will be reversed only upon a showing of clear error–that which leaves us with a definite and firm conviction that a mistake has been made." *Henley v. State*, 881 N.E.2d 639, 644 (Ind. 2008).

## Ineffective Assistance of Trial Counsel

Newton contends that his trial counsel, Barbara Williams ("Williams"), was ineffective for several reasons. "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Kubsch v. State*, 934 N.E.2d 1138, 1147 (Ind. 2010). A claim of ineffective assistance of trial counsel requires a showing that: (1) Williams's performance was deficient by falling below an objective standard of reasonableness; and (2) that the deficient performance prejudiced Newton such that "there is a reasonable probability that, but for William's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984); *Kubsch*, 934 N.E.2d at 1147. Failure to satisfy either of the two elements will cause the claim to fail. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002). When it is easier to dispose of an ineffectiveness claim on the lack of prejudice, then this is the course we should follow. *Trujillo v. State*, 962 N.E.2d 110, 114 (Ind. Ct. App. 2011). Moreover, "[i]solated mistakes, poor strategy, or bad tactics do not necessarily amount to ineffective assistance of counsel." *Herrera v. State*, 679 N.E.2d 1322, 1326 (Ind. 1997) (citations omitted). We address each of Newton's claims as to why Williams was ineffective in turn.

## *I. Failure to Properly Challenge the Search of Motel Room*

[7] Newton first argues that Williams inadequately challenged the search of the motel room during the suppression hearing by failing to object to the lack of probable cause to support the search warrant. In order to prevail on a claim of ineffective assistance of counsel for failure to object, Newton must show that the objections would have been sustained. *Kubsch*, 934 N.E.2d at 1150. "Probable cause to issue a search warrant does not require a demonstration of a prima facie showing of criminal conduct, nor does it require a demonstration that contraband will be found on the premises to be searched. Probable cause to issue a search warrant need only show there is a probability of criminal activity." *Blalock v. State*, 483 N.E.2d 439, 444 (Ind. 1985). The trial court's determination of probable cause is given significant deference. *Houser v. State*, 678 N.E.2d 95, 99 (Ind. 1997).

[8] Here, Newton specifically argues that trial counsel was ineffective for failing to argue that the search warrant for his motel room was not supported by sufficient probable cause and that the officers were dishonest or reckless in preparing the affidavit for the search warrant. First, Newton contends that Williams should have objected to the finding of probable cause by the trial court. However, a review of the affidavit for the search warrant does not support Newton's challenge to the finding of probable cause. Ex. Vol., Petitioner's Exhibit G. The affidavit describes the burglary and robbery incidents that occurred and the subsequent use of Moll's debit card taken during the burglary at two separate ATM machines shortly after the incident. Detective

Hamner identified Newton as the suspect in the surveillance video using the stolen debit card. At the suppression hearing, Williams "agree[d] that there was a finding of probable cause made by a judicial officer, and I'm not attacking or challenging that in any[]way." Motion to Suppress/Jury Trial Tr. p. 34. Because the search warrant was supported by sufficient probable cause, Williams was not deficient for failing to advance this argument at trial.

[9]     Newton next contends during a motion to suppress hearing that the search of his motel room was conducted prior to the issuance of a search warrant. However, Newton unsuccessfully raised the issue on direct appeal, and therefore, he is barred from raising this issue in these post-conviction proceedings. *Newton,* slip op. at 3–4.

[10]    Newton also argues that Williams was ineffective for failing to pursue an interlocutory appeal of the court's denial of the motion to suppress. However, under Ind. Appellate Rule 14, an interlocutory appeal of a denial of a motion to suppress is a discretionary appeal. Therefore, under Rule 14, the trial court would not have had to grant the request for an interlocutory appeal. It is not likely that Williams would have been successful even if she had pursued an interlocutory appeal, and therefore, Newton was not prejudiced.

## II.   Failure to Object to Evidence

[11]    Newton next argues that Williams was ineffective at trial for failing to object to several pieces of evidence during trial. Our supreme court has explained that "in order to prevail on a claim of ineffective assistance due to the failure to

object, the defendant must show an objection would have been sustained if made." *Overstreet v. State*, 877 N.E.2d 144, 155 (Ind. 2007). And if the objection would have been sustained, Newton still must show that but for Williams's failure to object, the result of his trial would have been different. *Id.* at 152.

*A. Testimony About Evidence Not Entered*

[12] Newton first argues that Williams was ineffective at trial for failing to raise an objection to witness testimony that assumed facts that were not entered into evidence. Newton contends that State's Exhibit 28 was improperly admitted. State's Exhibit 28 was a disc containing video footage from Casino Aztar which Detective Melton obtained from Casino Aztar. Detective Melton had given two discs from Casino Aztar to Detective Walker. Detective Walker had prepared another disc that had a QuickTime video file of the footage, which was identified and admitted as State's Exhibit 28. The original disc was never placed into evidence as an exhibit. Adam Krewson, the surveillance technical manager at Casino Aztar who provided Detective Melton with the original disc, testified that State's Exhibit 28 was an accurate depiction of the events that had occurred. The jury was shown the edited version, and the result of the trial would have been the same if the jury was shown the entire video from the original disc provided to Detective Melton by Krewson. Newton has failed to show how the edited version of the video prejudiced him and thus has not established that the unedited version of the video contains evidence that would have affected the outcome of his trial.

*B. Inconsistent Testimony of Witness*

[13] Newton also argues that Williams erred in failing to object to the inconsistent testimony of Krewson. At trial, the prosecutor attempted to play the surveillance video, State's Exhibit 28, on the Intellex[1] player on the disk. However, the prosecutor was unable to play the video on the Intellex player and instead used a different application on the prosecutor's computer to play the video. As a result of using this different application, the time stamp on the video changed to four hours later than the actual time. The actual time was 9:31:04, and the time stamp on the video shown at trial stated that the video was recording at 13:31:04. Krewson testified at trial and explained why the time stamp was off by a couple of hours.

> Well I've seen this in the past, there's a conflict of versions between the player embedded on the disk, and the solely installed [I]ntellex players, and that is that the time stamp can be off a little bit, right at a couple of hours, but the minutes remain the same.

Motion to Suppress/Jury Trial Tr. pp. 211.

[14] Newton contends that a lay person would not be competent to authenticate the accuracy of the time stamp, and thus, Williams was ineffective for failing to

---

[1] The Intellex player was a proprietary player that Casino Aztar used. Motion to Suppress/Jury Trial Tr. pp. 197; PCR Tr. pp. 99–100). A proprietary player "means you have to have that player to play that file." PCR Tr. p. 100.

object to Krewson's testimony about the time stamp discrepancy. We disagree. Newton has not demonstrated any prejudice by the showing of the Casino Aztar surveillance footage that displayed an inaccurate time stamp. The jury was presented with Krewson's testimony as to why the time stamp was off by a couple of hours. Additionally, surveillance footage from Old National Bank was also played for the jury, in which Newton could be more clearly identified. Both Detectives Melton and Hamner identified Newton in the Old National Bank video footage, and the clothing that Newton was wearing in the video was later found in Newton's hotel room. The jury was free to examine whether Newton was the person in the surveillance video as eight separate cameras captured Newton. Therefore, there was substantial independent evidence of Newton's guilt, and it is unlikely Newton was prejudiced by the time stamp discrepancy on Casino Aztar's surveillance video.

## Ineffective Assistance of Appellate Counsel

[15] Newton also claims that his appellate counsel, Jesse R. Poag ("Poag"), was constitutionally ineffective. "Ineffective assistance is very rarely found in cases where a defendant asserts that appellate counsel failed to raise an issue on appeal." *Overstreet*, 877 N.E.2d at 166. "One reason for this is that the decision of what issues to raise is one of the most important decisions to be made by appellate counsel." *Id.* at 167. Indeed, our supreme court has warned that we "should be particularly sensitive to the need for separating the wheat from the chaff in appellate advocacy," and we "should not find deficient performance when counsel's choice of some issues over others was reasonable in light of the

facts of the case and the precedent available to counsel when that choice was made." *Reed v. State*, 856 N.E.2d 1189, 1196 (Ind. 2006).

[16]    When we review claims of ineffective assistance of appellate counsel, we use the same standard applied to claims of ineffective assistance of trial counsel, i.e., Newton must show that Poag's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for Poag's deficient performance, the result of the proceeding would have been different. *Manzano v. State*, 12 N.E.3d 321, 329 (Ind. Ct. App. 2014) (citing *Harris v. State*, 861 N.E.2d 1182, 1186 (Ind. 2007)), *trans. denied*. Newton contends that Poag was ineffective by not raising five issues on appeal, and we address each in turn.

[17]    Newton argues that Poag was ineffective because he failed to raise viable issues on appeal that presented stronger arguments, which were significant and obvious on the face of the record. Newton specifically contends that Poag was ineffective for failing to argue on appeal that State's Exhibit 28 was improperly admitted. Krewson gave Detective Melton a disc that contained video footage from the Aztar Casino, and Detective Melton handed the disc to Detective Walker. Detective Walker prepared another disc that had a QuickTime video file of the footage, which was identified and admitted as State's Exhibit 28. However, the original disc was never placed into evidence as an exhibit. The time stamp on the disc was inaccurate. Krewson testified that State's Exhibit 28 was digitally the same as the disc he had provided to Detective Melton. State's Exhibit 28 was properly admitted and considered by the jury. Any challenge on

appeal to the admission of State's Exhibit 28 would not have been successful. Even if the jury considered the video footage with the incorrect time stamp, there is a reasonable probability that the result of the trial would have been the same. Therefore, Newton was not prejudiced as a result of the inaccurate time stamp on the disc and any argument to the contrary is meritless.

[18] Next, Newton contends that Poag was ineffective for failing to argue that the State never proved that Newton used some physical act to gain entry into Moll's residence, which is necessary to prove the breaking element of Count I burglary resulting in bodily injury. Moll testified that Newton likely broke into his house by prying the window open. *See Wilson v. State*, 94 N.E.3d 312, 323 (Ind. Ct. App. 2018) ("Using even the slightest force to gain unauthorized entry, which can include opening an unlocked door or pushing a door that is slightly ajar, satisfies the breaking element of the crime. Circumstantial evidence alone can prove the occurrence of a breaking."). Moll did not let Newton inside the residence and had not left any windows or doors open. There was sufficient evidence presented to the jury to infer a "breaking" had occurred, and therefore, appellate counsel was not ineffective for failing to raise this argument in Newton's direct appeal.

[19] Further, Newton argues that Poag was ineffective when he failed to raise the issue that the State never provided evidence of Newton's intent to commit a felony, specifically that Newton took or intended to take property from Moll. Newton made multiple demands for money from Moll at gunpoint. Newton checked for money inside a cabinet and behind the refrigerator and stove and

did not find any money. Newton then stole two debit cards from Moll's wallet, demanded the PINs, and used them shortly after. The jury could infer from the evidence that there was an intent to commit a felony. Because the evidence was sufficient to prove the breaking and intent to commit a felony elements for burglary, Poag was not ineffective for failing to raise these arguments in Newton's direct appeal.

[20] Newton also contends that Poag was ineffective when he failed to argue that Moll could not identify Newton as the person who entered the residence and committed the charged crimes since there was a difference between Moll's description and Newton's actual physical appearance. This argument does not have merit because Newton was identifiable in the Old National Bank surveillance footage. Detective Hamner identified the person on the video footage obtaining money from the ATM using Moll's stolen debit cards as Newton. This coupled with the fact that the clothes that Newton wore in the surveillance footage were later discovered in Newton's hotel room were enough together to prove identification. Therefore, Newton has not established that he was prejudiced by Poag's failure to present this issue to our court on direct appeal.

[21] Lastly, Newton argues that Poag was ineffective for failing to raise the claim that Detective Melton was coached to testify that he had knowledge of Newton's description from a previous case in which Newton was a potential suspect. However, the testimony of Detective Melton was controlled and modified in a way to avoid having the jury hear about Newton previously being

a suspect in another case. The trial court, upon both parties' agreement, instructed Detective Hamner and Melton as follows:

> [T]he information that we do not want to come before the jury or the Court is instructing you not to bring before the jury is any comments about any prior criminal offense that the defendant may or may not have been involved in, and also the fact that the specific offense that you were investigating or part of the investigation, was his son, Mr. Phaoah Newton's very serious offense that we had here.

Motion to Suppress/Jury Trial Tr. pp. 95–96. These efforts were made to protect Newton from any prejudice that might have resulted. Furthermore, Newton's counsel specifically agreed and wanted Detective Hamner to testify the way he did in order to avoid an appearance of impropriety. Newton's argument to the contrary is invited error. *See Booher v. State*, 773 N.E.2d 814, 822 (Ind. 2002) ("A party may not invite error, then later argue that the error supports reversal, because error invited by the complaining party is not reversible error").

[22] For these reasons, Poag's decision not to raise the issues Newton thought were the stronger arguments was not deficient. Accordingly, the post-conviction court properly concluded that Newton was not denied the effective assistance of appellate counsel.

## Conclusion

[23] Based on the facts and circumstances before us, the post-conviction court did not clearly err when it rejected Newton's claims of ineffective assistance of trial

counsel and appellate counsel. Accordingly, we affirm the judgment of the post-conviction court denying Newton's petition for post-conviction relief.

Vaidik, C.J., and Crone, J., concur.